UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEANNENE LOUISE LENIGAN,

                          Plaintiff,

v.                                                      5:10-CV-1420
                                                        (GTS/DEP)

SYRACUSE HANCOCK INT'L AIRPORT; CITY
OF SYRACUSE; and OTIS ELEVATOR CO.,

                          Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

JERRY MARTILLOTTI & ASSOCIATES, P.C.                    GERALD J. MARTILLOTTI, ESQ.
   Counsel for Plaintiff
4221 Ridge Avenue
P.O. Box 18509
Philadelphia, PA 19129

PINO & ASSOCIATES, LLP                                  BRIAN W. COLISTRA, ESQ.
   Counsel for the Syracuse Defendants
Westchester Financial Center
50 Main Street
White Plains, NY 13060

BOND SCHOENECK & KING PLLC                              THOMAS E. KELEHER, ESQ.
   Counsel for Defendant Otis
One Lincoln Center
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this personal injury action filed by Jeannene Louise

Lenigan ("Plaintiff") against Otis Elevator Company ("Defendant Otis"), Syracuse Hancock

International Airport and the City of Syracuse ("the Syracuse Defendants"), are Defendant Otis'

motion for summary judgment and the Syracuse Defendants' motion for summary judgment.

(Dkt. Nos. 20, 26.)  For the reasons set forth below, both motions are granted; Plaintiff's

Amended Complaint is dismissed; and the Syracuse Defendants' cross-claims against Defendant

Otis are dismissed.

## I.    RELEVANT BACKGROUND

### A.    Allegations and Claims of Plaintiff's Amended Complaint

Generally, in her Amended Complaint, Plaintiff alleges that, as she was riding an

escalator that was manufactured, inspected and maintained by Defendant Otis in an airport that

was owned, operated and maintained by the Syracuse Defendants ("the Escalator"), the Escalator

failed to operate properly, causing her to fall backward and sustain severe injuries ("the

Accident").  (Dkt. No. 1, at ¶¶ 8-17.)  Liberally construed, Plaintiff's Amended Complaint

asserts the following claims against Defendants: (1) a claim of negligence against the Syracuse

Defendants; and (2) a claim of negligence, a claim of negligence based on the doctrine of  *res

ipsa loquitur*, and a claim of strict products liability against Defendant Otis.  (*Id*. at ¶¶ 18-36.)

Familiarity with these claims and the factual allegations supporting them in Plaintiff's Amended

Complaint is assumed in this Decision and Order, which is intended primarily for review by the

parties.  (*Id*.)

### B.    Parties' Briefing on Defendant Otis' Motion for Summary Judgment

Generally, in support of its motion for summary judgment, Defendant Otis asserts the

following three arguments: (1) as a matter of law, Defendant Otis cannot be liable for negligence

because insufficient record evidence exists from which a rational factfinder could conclude that

Defendant Otis had actual or constructive notice of any defect in the Escalator before the

Accident; (2) as a matter of law, the doctrine of *res ipsa loquitor* is not available to Plaintiff,

because insufficient record evidence exists from which a rational factfinder could conclude that Defendant Otis had exclusive control of the Escalator, and that the Accident was of a kind that ordinarily does not occur in the absence of negligence; and (3) as a matter of law, any claim that Plaintiff is asserting against Defendant Otis for strict products liability is without merit, because it is uncontroverted, based on the current record, that it was Schindler Elevator Company (not Defendant Otis) that designed, manufactured and produced the Escalator.  (Dkt. No. 20, Attach. 7, at 8-12 [attaching pages "5" through "9" of Def. Otis' Memo. of Law].)  Defendant Otis also requests the dismissal of the Syracuse Defendants' cross-claims against it.  (*Id*. at 12 [attaching page "9" of Def. Otis' Memo. of Law]; *see also* Dkt. No. 20, at 1.)

Generally, in response to Defendant Otis' motion, Plaintiff asserts the following two arguments: (1) Defendant Otis can be liable for negligence because a rational factfinder could conclude that Defendant Otis had actual or constructive notice of a defect in the Escalator, based on the evidence that six individuals fell on the Escalator during the two-year-four-month-period before the Accident, and the evidence that there was a mechanism in place for Defendant Otis to receive information regarding such incidents on the Escalator; and (2) the doctrine of *res ipsa loquitor* is available to Plaintiff because the evidence on which Defendant Otis relies in arguing that it lacked exclusive control of the Escalator (i.e., the deposition of Defendant Otis' Service Operators Manager, Jeremy Robison) is not based on personal knowledge (in that, *inter alia*, he has never performed physical work on the Escalator, he had no involvement at all with the Escalator before the Accident, and he had no discussions with anyone from Defendant Otis about the work done on the Escalator before the Accident), and in any event is not sufficient to preclude a conclusion that Defendant Otis caused the Accident.  (Dkt. No. 23, Attach. 10, at 8-17 [attaching pages "8" through "17" of Plf.'s Opp'n Memo. of Law].)

Generally, in reply to Plaintiff's response, Defendant Otis asserts the following four arguments: (1) Plaintiff has submitted inadmissible evidence in opposition to Defendant Otis' motion through (a) submitting an unauthenticated, hearsay transcription of a conversation between Plaintiff's counsel and an alleged nonparty tort victim (Robert Shaw) on February 10, 2012, and (b) failing to submit an affidavit attaching any of the exhibits provided in Plaintiff's response; (2) Plaintiff's purported evidence that Defendant Otis had actual or constructive notice of any defect in the Escalator before the Accident is insufficient because (a) none of the six incidents in question involved the defect asserted in this action (i.e., the Escalator jerking, or stopping and restarting abruptly), (b) none of the incidents were reported to Defendant Otis, (c) in any event, the incidents were too remote in time from the Accident to provide Defendant Otis with actual or constructive notice of a defect, and (d) Plaintiff does not even attempt to distinguish the cases cited by Defendant Otis; (3) the doctrine of *res ipsa loquitur* does not apply because (a) contrary to Plaintiff's argument, the testimony of Jeremy Robison is based on personal knowledge, (b) Plaintiff adduces no evidence controverting his testimony, and (c) again, Plaintiff does not even attempt to distinguish the relevant cases cited by Defendant Otis; and (4) Plaintiff's claim based on products liability must be dismissed, because Plaintiff does not dispute that the Escalator was not designed and manufactured by Defendant Otis.  (Dkt. No. 24, Attach. 1, at 4-13 [attaching pages "1" through "10" of Def. Otis' Reply Memo. of Law].)

## C.      Parties' Briefing on the Syracuse Defendants' Motion for Summary Judgment

Generally, in support of their motion for summary judgment, the Syracuse Defendants assert the following three arguments: (1) as a matter of law, Defendant Syracuse Hancock International Airport cannot be held liable to Plaintiff, because it is not a legal entity separate and distinct from Defendant City of Syracuse but rather is simply real property owned by the

City of Syracuse and used for airport purposes; (2) as a matter of law, Defendant City of

Syracuse cannot be held liable to Plaintiff for negligence because, based on the current record,

no rational fact finder could conclude that it had actual or constructive notice of any defect in the

Escalator before the Accident; and (3) Plaintiff cannot avail herself of the doctrine of *res ipsa*

*loquitur* in maintaining her suit against Defendant City of Syracuse because her Amended

Complaint asserts no claim of negligence based on that doctrine against Defendant City of

Syracuse.  (Dkt. No. 26, Attach. 10, at 9-17 [attaching pages "6" through "14" of Syracuse Defs.'

Memo. of Law].)

     Generally, in response to the Syracuse Defendants' motion, Plaintiff asserts the following

two arguments: (1) Defendant City of Syracuse can be liable to Plaintiff for negligence because a

rational factfinder could conclude that Defendant City of Syracuse had actual or constructive

notice of a defect in the Escalator, based on the evidence that six individuals fell on the Escalator

during the two-year-four-month-period before the Accident, and the evidence that there was a

mechanism in place for Defendant City of Syracuse to notify Defendant Otis regarding such

incidents on the Escalator but that they failed to do so; and (2) while Plaintiff has asserted a

claim of negligence based on the doctrine of *res ipsa loquitur* against Defendant Otis, she has

not asserted a claim of negligence based on the doctrine of *res ipsa loquitur* against the Syracuse

Defendants.  (Dkt. No. 28, at 11-17 [attaching pages "11" through "17" of Plf.'s Opp'n Memo.

of Law].)

     Generally, in reply to Plaintiff's response, the Syracuse Defendants assert the following

three arguments: (1) Plaintiff has failed to respond to the Syracuse Defendants' argument that the

Defendant Syracuse Hancock International Airport cannot be held liable to Plaintiff; and (2) the

six incidents relied on by Plaintiff were insufficient to confer on Defendant City of Syracuse

actual or constructive notice of any defect in the Escalator before the Accident because (a) none of the six incidents in question involved the defect asserted in this action (i.e., the Escalator jerking, or stopping and restarting abruptly), (b) only one of the six incidents involved any defect whatsoever in the Escalator, and (c) that defect, which occurred more than two years before the Accident, was in fact reported to, and repaired by, Defendant Otis, and was followed by two years of regular inspections by Defendant Otis resulting in a finding of no mechanical problems; and (3) also insufficient to confer such notice on Defendant City of Syracuse were (a) the statement of a ticket clerk, which was hearsay from an unidentified woman, and (b) the testimony of Transportation Security Administration ("TSA") Lead Officer Christopher Aloi, who never testified regarding a mechanical problem with the Escalator.  (Dkt. No. 29, at 4-12 [attaching pages "1" through "9" of Syracuse Defs.' Reply Memo. of Law].)

## II.    LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2).  As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit

under the governing law." *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c),(e).  However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial.  Fed. R. Civ. P. 56(c),(e).

What this burden-shifting standard means when a plaintiff has failed to respond to a defendant's motion for summary judgment is that "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, practically speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the defendants' motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the defendants.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  However, the plaintiff's failure to respond to the defendant's motion for summary judgment lightens the defendant's burden on the motion.

7

More specifically, where a plaintiff has failed to properly respond to a defendant's factual assertions contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the factual assertions contained in that Rule 7.1 Statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.  *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); N.D.N.Y. L.R. 7.1(a)(3); N.D.N.Y. L.R. 56.2.

Similarly, where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[1]  Stated another way, where a defendant has properly filed a memorandum of law (in support of a properly filed motion for summary judgment), and the plaintiff has failed to respond to that memorandum of law, the only remaining issue is whether the legal arguments advanced in the defendant's memorandum of law are *facially meritorious*.[2]  A defendant's burden in making legal arguments that are facially

---

[1]      *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

[2]      *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.); *accord*, *Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.);

meritorious has appropriately been characterized as "modest."[3]

 Implied in the above-stated standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[4]  In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.  *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004).  That having been said, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge."  Fed. R. Civ. P. 56(e)(1).  In addition, such an affidavit (or verified complaint) must not be conclusory.  Fed. R. Civ. P. 56(e)(2).

---

*Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

 [3] *Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.); *accord*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation); *cf. Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

 [4] *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002); *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

### III.    UNDISPUTED MATERIAL FACTS

#### A.    Undisputed Material Facts on Defendant Otis' Motion

Unless otherwise supported by citations to record evidence, the following material facts have been asserted and supported by Defendant Otis in its Local Rule 7.1 Statement of Undisputed Material Facts, and either expressly admitted or not sufficiently denied by Plaintiff in her Local Rule 7.1 Response.  (*Compare* Dkt. No. 20, Attach. 1 [Def. Otis' Rule 7.1 Statement] *with* Dkt. No. 23 [Plf.'s Rule 7.1 Response].)

##### 1.    The Accident

On September 3, 2009, eighty-one year old Plaintiff arrived at the Syracuse Hancock International Airport to board a US Airways flight to Orlando, Florida.  Plaintiff walked through the Airport terminal with a rolling standard sized carry-on bag, a large purse hanging over her shoulder, and a sweater that she was carrying in one of her arms.  While carrying her bags, she stepped onto the Escalator (which was called the "south up" escalator and was located near the US Airways terminal).

At some point while riding the Escalator, Plaintiff fell and was injured.  Plaintiff believes that, before her fall, she felt the Escalator either "jerk[]" or "grab[]" her foot.[5]  She cannot recall whether she fell forward or backward, whether she was holding onto the handrail, or where she was on the Escalator when she fell.

Immediately after the Accident, TSA Lead Officer Christopher Aloi, who was working near the Escalator, shut down the Escalator and tended to the Plaintiff.  Plaintiff was then taken to the hospital and treated for her injuries.

---

[5]    (Dkt. No. 20, Attach. 3, at 64, 68, 69, 159, 160 [attaching pages "65," "69," "70," "160," "161" of Plf.'s Depo. Tr.].)

### 2.      The Escalator

The Escalator is located near the US Airways terminal at the Airport.   It was

manufactured, designed and produced by Schindler Elevator Corporation, not Defendant Otis.

Prior to the Accident on September 3, 2009, Defendant Otis conducted periodic

inspections of the Escalator.[6]   Those inspections included the following: (1) talking with the

customer to see if there were any complaints or problems; (2) riding the Escalator to observe ride

quality; (3) checking the Escalator skirt-to-step clearance and tread condition; (4) checking that

all skirting and panels were in place; (5) checking handrails and handrail drive traction and

balustrade trim; (6) checking comb plates, floor plates and steps; (7) checking demarcation and

comb plates lights and signage; (8) comparing handrail traveling speed to the step traveling

speed; (9) checking the stop switch, key switch and handrail entry guards; (10) checking the

main drive shaft brake, brake springs and brake pins; (11) lubricating the chains as necessary;

and (12) cleaning the machine room floor and equipment.[7]   After conducting each inspection, the

---

[6]      (*Compare* Dkt. No. 20, Attach. 1, at ¶ 11 [Def. Otis' Rule 7.1 Statement, asserting fact and supporting that assertion with specific citation to admissible record evidence] *with* Dkt. No. 23, at ¶ 11 [Plf.'s Rule 7.1 Response, "part[ially]" denying the fact stated, but not identifying which "part" of the fact is being denied, and in any event not supporting that denial with a specific citation to the record where the factual issue arises, but merely denying knowledge of "exactly what was done in these inspections"].)  Such a denial of knowledge is insufficient to create a genuine dispute of material fact. *See, e.g., U.S. v. 15 Black Ledge Drive*, 897 F.2d 97, 102 (2d Cir.1990) (affirming a summary judgment ruling and rejecting a wife's claim of no knowledge because "a bare denial was insufficient to create a genuine triable issue" given the apparent evidence of drug activity); *Brill v. Prudential-Bache Sec., Inc.*, 84-CV-0846, 1985 WL 8037, at *3 (S.D.N.Y. July 29, 1985) ("In response to defendants' assertion that the nature of the fund was plainly disclosed in the prospectus Walden gave her, Brill states only 'I do not know whether I received any prospectus for this fund, or if so, whether I received it before or after I bought the fund.' Brill does not explain what she expects to happen between now and the time of trial that will refresh her memory. I conclude that her disclaimer of knowledge is insufficient to raise a material issue of fact with respect to disclosure of the nature of Chancellor Futures Fund II.").

[7]      (*Id.*)

Otis mechanic would make any necessary adjustments and repairs.[8]

The maintenance records for the Escalator going back two years before the Accident reveal no prior history of "jerking" or stopping and restarting abruptly.  More specifically, those maintenance records reveal the following facts: (1) during that period, Otis mechanics inspected the Escalator a total of seventeen times for preventative maintenance and/or service; (2) during that period, there were no problems regarding, and no repairs required for, "jerking" or stopping and starting abruptly;[9] (3) during that period, Defendant Otis was never notified by the City or any other party of any such problem;[10] (4) although Plaintiff claims that she fell on September 3, 2009, Otis was not notified about her alleged Accident until this lawsuit was filed, years after the Accident occurred;[11] (5) during the two years before the Accident, the Escalator was, in all respects, code compliant and operating as intended;[12] (6) in fact, Defendant Otis had made a regular inspection of the Escalator on August 26, 2009, just eight days before the Accident; and

---

[8]     (*Id.*)

[9]     (*Compare* Dkt. No. 20, Attach. 1, at ¶ 14 [Def. Otis' Rule 7.1 Statement, asserting fact and supporting that assertion with specific citations to admissible record evidence] *with* Dkt. No. 23, at ¶ 14 [Plf.'s Rule 7.1 Response, denying fact but not supporting that denial with a specific citation to any portion of the record actually controverting the fact].)

[10]     (*Compare* Dkt. No. 20, Attach. 1, at ¶ 15 [Def. Otis' Rule 7.1 Statement, asserting fact and supporting that assertion with specific citation to admissible record evidence] *with* Dkt. No. 23, at ¶ 15 [Plf.'s Rule 7.1 Response, denying fact but not supporting that denial with a specific citation to any portion of the record actually controverting the fact].)

[11]     (*Compare* Dkt. No. 20, Attach. 1, at ¶ 16 [Def. Otis' Rule 7.1 Statement, asserting fact and supporting that assertion with specific citation to admissible record evidence] *with* Dkt. No. 23, at ¶ 16 [Plf.'s Rule 7.1 Response, denying fact but not supporting that denial with a specific citation to any portion of the record actually controverting the fact].)

[12]     (*Compare* Dkt. No. 20, Attach. 1, at ¶ 17 [Def. Otis' Rule 7.1 Statement, asserting fact and supporting that assertion with specific citation to admissible record evidence] *with* Dkt. No. 23, at ¶ 17 [Plf.'s Rule 7.1 Response, denying fact but not supporting that denial with a specific citation to any portion of the record actually controverting the fact].)

(7) at that time there were no problems identified with how the Escalator was operating.

TSA Lead Officer Christopher Aloi worked at the Airport for four and a half years before the Accident and rode the Escalator either every day or every other day he worked.  During that time, he never experienced or otherwise observed any issues with the operation of the Escalator. In fact, Mr. Aloi rode the Escalator on September 3, 2009, before the Accident occurred and did not notice anything wrong with it at that time.  He also observed the Escalator immediately after the Accident and did not notice anything wrong with how it was operating.

Furthermore, Airport Maintenance Supervisor Ronald Bowles has no knowledge of any incident before the Accident where the Escalator "jerked" or stopped and restarted abruptly.  In addition, based on his review of maintenance logs sent to the City from Otis dating back to May of 2009, he has no knowledge of the City ever being provided with notice of any dangerous condition with the Escalator before the date of the Accident.

In the experience of Defendant Otis' Service Operators Manager, Jeremy Robison, there are many potential causes for an escalator "jerking."[13]  For example, in the experience of Mr.

---

[13]   (*Compare* Dkt. No. 20, Attach. 1, at ¶ 25 [Def. Otis' Rule 7.1 Statement, asserting non-conclusory part of fact and mistakenly citing Paragraph 12 of Robison's Declaration in support of that assertion when in fact Paragraph 11 supports the assertion] *with* Dkt. No. 23, at ¶ 25 [Plf.'s Rule 7.1 Response, denying fact but not supporting that denial with a specific citation to the record where the factual issue arises, but merely arguing that Robison had no involvement with this particular escalator before the time in question and/or that the fact must be adduced by an expert, which Robison is not].)  The Court notes that the record contains evidence that, at the time of authoring his declaration (on May 2, 2012), Mr. Robison had been employed by Otis (1) as the Service Operations Manager of Otis' Service Department for nine months, and (2) as the Service Manager of Otis' Las Vegas branch for nearly seven and a half years.  (Dkt. No. 23, Attach. 4, at 3-4 [attaching pages "5" and "6" of Robison's Depo. Tr.]; Dkt. No. 20, Attach. 6, at ¶ 1 [Robison Decl.].)  The record also contains evidence that, in those capacities, he has managed technicians who, *inter alia*, perform regular maintenance, service, and repairs on Otis' escalators.  (Dkt. No. 23, Attach. 4, at 3 [attaching page "5" of Robison's Depo. Tr.].)  Finally, the record contains evidence that, in performing those duties, he has been on site to supervise a repair and preventative maintenance of an escalator at the Syracuse Hancock International Airport.  (*Id*. at 4 [attaching page "7" of Robison's Depo. Tr.].)  Under the circumstances, the

Robison, escalators may incur problems as a result of foreign objects, such as parts of sneakers, buttons or other things dropped by passengers on the escalator that may make their way into the internal working of the machine.[14]  Here, because the Escalator is the only escalator providing travelers with access to the US Airways, American Airlines and JetBlue departure gates, it is frequently traveled and subject to extensive public contact on a daily basis.

### B.      Undisputed Material Facts on the Syracuse Defendants' Motion

Generally, the material facts asserted in the Syracuse Defendants' Rule 7.1 Statement and either expressly admitted or not sufficiently denied by Plaintiff in her Local Rule 7.1 Response are the same as the facts described above in Part III.A. of this Decision and Order, with the following two exceptions.  (*Compare* Dkt. No. 26, Attach. 9 [Syracuse Defs.' Rule 7.1 Statement] *with* Dkt. No. 27 [Plf.'s Rule 7.1 Response].)

First, for purposes of the Syracuse Defendants' motion, the following additional fact is undisputed: preventative maintenance and repair service are provided for the Escalator by Defendant Otis pursuant to a contract.  (*Compare* Dkt. No. 26, Attach. 9, at ¶ 11 [Syracuse Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, at ¶ 11 [Plf.'s Rule 7.1 Response].)

---

Court finds that Paragraph 11 of Mr. Robison's Declaration "can[] be presented in a form that would be admissible in evidence" at trial as required by Fed. R. Civ. P. 15(c)(2), pursuant to Fed. R. Evid. 701 (or possibly pursuant to Fed. R. Evid. 702).

[14]      (*Compare* Dkt. No. 20, Attach. 1, at ¶ 27 [Def. Otis' Rule 7.1 Statement, asserting non-conclusory part of fact and mistakenly citing Paragraph 14 of Robison's Declaration in support of that assertion when in fact Paragraph 13 supports the assertion] *with* Dkt. No. 23, at ¶ 27 [Plf.'s Rule 7.1 Response, denying fact but not supporting that denial with a specific citation to the record where the factual issue arises, but merely arguing that Robison had no involvement with this particular escalator before the time in question and/or that the fact must be adduced by an expert, which Robison is not].)  For the reasons stated above in note 13 of this Decision and Order, under the circumstances, the Court finds that Paragraph 13 of Mr. Robison's Declaration "can[] be presented in a form that would be admissible in evidence" at trial as required by Fed. R. Civ. P. 15(c)(2), pursuant to Fed. R. Evid. 701 (or possibly pursuant to Fed. R. Evid. 702).

Second, for purposes of the Syracuse Defendants' motion, the following additional fact is

undisputed: the Otis Preventative Maintenance Update records dating back approximately three-

and-a-half months before the Accident, and the Otis Online History Reports dating back

approximately nineteenth months before the Accident, reveal no notice to the Airport, in any

form whatsoever, by any party or person whatsoever, of any mechanical problem with the

Escalator that would likely manifest itself in a jerking, grabbing or abrupt starting or stopping of

the Escalator.  (*Compare* Dkt. No. 26, Attach. 9, at ¶ 17 [Syracuse Defs.' Rule 7.1 Statement,

asserting fact and supporting that assertion with specific citation to admissible record evidence]

*with* Dkt. No. 27, at ¶ 17 [Plf.'s Rule 7.1 Response, denying fact but not but not supporting that

denial with a specific citation to the record that actually controverts fact].)

The Court would add only two points regarding certain of the responses offered by

Plaintiff in her Rule 7.1 Response to the Syracuse Defendants' Rule 7.1 Statement.  While the

fact asserted in Paragraph 12 of the Syracuse Defendants' Rule 7.1 Statement is denied by

Plaintiff more extensively than is the fact asserted in the corresponding paragraph of Defendant

Otis' Rule 7.1 Statement (i.e., Paragraph 11), the record citations offered by Plaintiff in support

of that more-extensive denial do not actually controvert the fact asserted.  *See, supra,* note 13 of

this Decision and Order (explaining why Mr. Robison is competent to testifying regarding the

fact asserted).  Finally, while each of Plaintiff's responses to the facts asserted in Paragraphs 13

and 23 of the Syracuse Defendants' Rule 7.1 Statement attempt to give a "further answer," each

of those "further answer[s]" are (1) preceded by an express admission of the fact asserted, and

(2) immaterial for reasons explained by the Court above in Part III.A. of this Decision and Order.

## IV.     ANALYSIS

### A.     Defendant Otis's Motion

After carefully considering the matter, the Court finds that Plaintiff's claims against

Defendant Otis should be dismissed for each and every of the numerous alternative reasons

offered by Defendant Otis in its memoranda of law.  (Dkt. No. 20, Attach. 7, at 8-12 [attaching

pages "5" through "9" of Def. Otis' Memo. of Law]; Dkt. No. 24, Attach. 1, at 4-13 [attaching

pages "1" through "10" of Def. Otis' Reply Memo. of Law]; *see also, supra,* Part I.B. of this

Decision and Order [generally summarizing those reasons].)  The Court would add only the

following four points.

First, as a preliminary matter, Plaintiff's Exhibit 9 (attaching an unsworn,

unauthenticated transcription of conversation between Plaintiff's counsel and non-party) is

disregarded for reasons offered by Otis.  In addition to relying on the two cases cited by Otis, the

Court relies on four other cases.[15]  The fact that Gerald J. Martillotti swears that the document "is

---

[15]        *See Saari v. Merck & Co., Inc.*, 961 F. Supp. 387, 397 (N.D.N.Y. 1997) (Smith, M.J.) ("Even if expert medical proof of causation were not required in a case of this kind, plaintiff's other submissions in opposition to defendants' motion are also insufficient to establish causation. More specifically, plaintiff has submitted the following as supporting evidence: . . . an unsworn transcript of an alleged conversation with Dr. Wise . . . . It is readily apparent, however, that this additional evidence is not admissible . . . and, therefore, it cannot defeat defendants' motion."); *Perkins v. Memorial Sloane-Kettering Cancer Ctr.*, 02-CV-6493, 2005 WL 2453078, at *15 (S.D.N.Y. Sept. 30, 2005) ("Since the transcripts of the . . . audio recording of the January 2, 2002 meeting between Prager, Cotter and plaintiff were not authenticated, they shall be disregarded."); *Rivera v. Choice Courier Sys., Inc.*, 01-CV-2096, 2004 WL 1444852, at *6 (S.D.N.Y. June 25, 2004) ("We note at the outset that we decide the instant motions for summary judgment without regard to plaintiff's proffered "transcripts" of conversations between plaintiff and Clewner and between plaintiff and Frank Rivera, which plaintiff claims to have recorded secretly on the day on which he was dismissed. Since they have not been authenticated, they are inadmissible."); *Cauble v. Mabon Nugent & Co.*, 594 F. Supp. 985, 995 (S.D.N.Y. 1984) ("Because the transcript relied on here is unauthenticated, it is inadmissible. . . .  No admissible evidence having been presented to create any genuine dispute of material fact, summary judgment for the defendants on this count is granted.").

a true and accurate copy of the transcript of the Interview of Robert Shaw" conducted by *Ed Przchowski* on February 10, 2012 (*compare* Dkt. No. 25, at ¶ 10 *with* Dkt. No. 23, Attach. 9) does not cure the document's defects.  Also disregarded on the ground of lack of authentication are Plaintiff's Exhibit 3 (attaching photographs of Plaintiff taken by unidentified person at unidentified time) and Exhibit 8 (attaching uncertified "draft cop[ies]" of police reports obtained by an unidentified person from an unidentified source).  In any event, even if Exhibits 3, 8 and 9 were considered by the Court, that consideration would not result in the denial of Defendant Otis' motion.

Second, with regard to Plaintiff's actual or constructive notice argument, even if the Court were to consider Plaintiff's evidence of the six prior incidents she relies on, the Court would not find that evidence to be sufficient to withstand summary judgment for each of the three alternative reasons offered by Defendant Otis: (1) none of the six incidents involved the defect asserted in this action (i.e., the escalator jerking, or stopping and restarting abruptly);[16] (2) in any event, no evidence exists that five of the six incidents were reported to Defendant Otis;[17]

---

[16]     According to the records adduced by Plaintiff, five of the six incidents did not indicate an Escalator malfunction whatsoever; and while one of the six incidents did indicate an Escalator malfunction, the malfunction in no way involved the steps of the Escalator jerking, or stopping and restarting abruptly.  (Dkt. No. 23, Attach. 8-9.)

[17]     The deposition testimony of Kenneth Hale stating that Defendant Otis would be immediately notified of any accident that was reported to the Syracuse Defendants (*see* Dkt. No. 23, Attach. 5, at 19) is insufficient to create a genuine dispute of material fact for the following three reasons: (1) Mr. Hale has no recollection of whether the six-month period he worked for Otis at the Airport was before or after September 2009 (*see* Dkt. No. 23, Attach. 5, at 8-10); (2) in addition, the materiality of Mr. Hale's testimony hinges on one or more of the six incidents in question having been reported to the Syracuse Defendants, which has not been established (*see, e.g.,* Dkt. No. 23, Attach. 7, at 14, 18 [deposition transcript of Airport Manager Ronald Bowles indicating that he has no recollection of accidents on any of the escalators being reported to the Syracuse Defendants before March 6, 2010, and that, while he has a recollection of such accidents being reported after March 6, 2010, he does not recall on which escalator those accidents occurred], *accord,* Dkt. No. 23, Attach. 5, at 19 [deposition transcript of Kenneth

and (3) in any event, the incidents (which occurred between May 15, 2007, and September 20, 2008) were too remote in time to provide Defendant Otis with actual or constructive notice of a defect, especially given the seventeen regular inspections that occurred during the two years before the Accident).[18]

As for Plaintiff's related argument that the Court should disregard (as unsupported by personal knowledge) Mr. Robison's testimony that Defendant Otis never received a complaint of the defect in question during the two years before the Accident, Plaintiff's argument ignores the point of law that a corporate designee, under Fed. R. Civ. P. 30(b)(6), can base his testimony on a review of records.[19]  It bears noting that Mr. Robison' testimony is consistent with the testimony of another Otis employee, Kenneth Hale, who was a repair technician and then

---

Hale]); and (3) most importantly, Mr. Hale's testimony does not actually contradict Mr. Robison's testimony, which stated that *the defect in question* was not reported to Defendant Otis *within two years before* the Accident.  The Court notes that New York courts appear to rather routinely find no notice of a defect in an escalator where no records exist of a complaint regarding the defect, or a discovery of the defect (upon a regular inspection), in the weeks or months before the Accident.  *See, e.g., Espinoza v. Fed. Dep't Stores, Inc.*, 904 N.Y.2d 3, 4 (N.Y. App. Div., 1st Dep't 2010); *Bazne v. Port Auth. of New York*, 877 N.Y.S.2d 321, 322 (N.Y. App. Div., 1st Dep't 2009); *Birdsall v. Montgomery Ward and Co., Inc.*, 486 N.Y.S.2d 461, 462 (N.Y. App. Div., 3d Dep't 1985); *cf. Parris v. Port of New York Auth.*, 850 N.Y.S.2d 53, 54 (N.Y. App. Div., 1st Dep't 2008).

[18]     *See Busone v. City of Troy,* 639 N.Y.S.2d 589, 590 (N.Y. App. Div., 3d Dep't 1996) (finding that a letter sent to the city in March of 1990 reporting potholes in sidewalk was, *inter alia*, "too remote in time" from plaintiff's fall into one of those potholes in March of 1992 to give the city notice of the pothole).  It should be noted that the only one of the six incidents that indicate an Escalator malfunction occurred on May 15, 2007, well more than two years before the Accident.  (Dkt. No. 23, Attach. 8-9.)

[19]     *See Harrison-Hoge Indus., Inc. v. Panther Martin S.R.L.*, 05-CV-2851, 2008 WL 905892, at *28 (E.D.N.Y. Mar. 31, 2008) ("It is axiomatic that a corporate representative may testify and submit affidavits based on knowledge gained from a review of books and records.") (collecting cases).

maintenance mechanic for Defendant Otis between 2003 and September 2009.[20]  In any event, if Plaintiff was not satisfied with the adequacy of Mr. Robison's preparation for his deposition, Plaintiff had numerous remedies available, including but not limited to (1) a motion pursuant to Fed. R. Civ. P. 30(d)(1) to adjourn the deposition and complete it on a second day to permit Mr. Robison to better prepare for it, and/or (2) a motion pursuant to Fed. R. Civ. P. 30(b)(6) to compel Defendant Otis to designate another person or persons to be deposed by Plaintiff (at Defendant Otis' expense) on the matters listed in her prior Fed. R. Civ. P. 30(b)(6) Notice. Having failed to avail herself of those remedies, Plaintiff cannot now (at the summary judgment stage) reasonably seek the preclusion of Mr. Robison's testimony based on a purported inadequacy of his preparation for his deposition as a corporate designee.[21]

Third, with regard to Plaintiff's *res ipsa loquitur* argument, Defendant Otis has adduced evidence establishing, and Plaintiff has failed to adduce evidence controverting, that the Escalator was not in Defendant Otis' exclusive control.  As an initial matter, it must be remembered that Plaintiff has expressly admitted that, "[b]ecause the Escalator is the only escalator providing travelers with access to the US Airways, American Airlines and JetBlue departure gates, it is frequently traveled and subject to extensive public contact on a daily basis." (Dkt. No. 23, at ¶ 26 [Plf.'s Rule 7.1 Response].)  It should be noted that not only is this fact

---

[20]    (*See* Dkt. No. 23, Attach. 5, at 7-8, 13-14, 16-19 [deposition transcript of Kenneth Hale, stating that, between when he started work for Defendant Otis in approximately 2003 and when Accident occurred in September 2009, he never had to perform repair on the Escalator and never heard any complaints about it].)

[21]    *See AstraZeneca AB v. Dr. Reddy's Labs., Ltd.*, 603 F. Supp.2d 596, 603 (S.D.N.Y. 2009) ("[I]f Plaintiff believed that DRL failed to comply with prior orders concerning discovery–specifically, the Court's order that it produce a knowledgeable witness who could testify pursuant to Federal Rule of Civil Procedure 30(b)(6)–it should have moved to compel compliance. Its failure to do so bars it from complaining about the adequacy of the witness' testimony at this point [i.e., the summary judgment stage].").

supported by Paragraph 13 of Mr. Robison's Declaration but it is also consistent with Paragraph 4 of Mr. Bowles' Declaration.  New York courts have repeatedly found such evidence of an extensive amount of public contact on a daily basis to be, in and of itself, sufficient to preclude the application of the doctrine of *res ipsa loquitur* in personal injury cases arising from escalators that suddenly jerked, shook and/or stopped.[22]

In any event, Defendant Otis has offered more evidence of its lack of exclusive control of the Escalator–testimony by Jeremy Robison that the Escalator could have "jerked" as a result of a foreign object, such as a part of a sneaker, button or other thing dropped by a passenger on the Escalator that could have made its way into the internal working of the Escalator.  *See, supra,* Part III.A.2. of this Decision and Order.  As explained above in Part III.A.2. of this Decision and Order, Mr. Robison is competent to offer such testimony.  *See, supra,* notes 13 and 14 of this Decision and Order.  Indeed, such testimony has been permitted, and has been found to preclude the application of the doctrine of *res ipsa loquitur*, in analogous if not nearly identical situations.[23]

---

[22]     *See, e.g., Bazne v. Port Auth. of New York*, 877 N.Y.S.2d 321, 322 (N.Y. App. Div., 1st Dep't 2009) ("[P]laintiffs' reliance on the doctrine of res ipsa loquitur is unavailing because they failed to demonstrate that the escalator, which was subject to extensive public contact on a daily basis, was in defendant's exclusive control . . . .") (internal quotation marks and citations omitted); *Parris v. Port of New York Auth.*, 850 N.Y.S.2d 53, 54-55 (N.Y. App. Div., 1st Dep't 2008) ("Plaintiff's reliance on the doctrine of res ipsa loquitur is unavailing because he failed to demonstrate that the escalator, which was subject to extensive public contact on a daily basis, was in defendant's exclusive control.").

[23]     *See, e.g., Ebanks v. New York City Tr. Auth.*, 70 N.Y.2d 621, 623 (N.Y. 1987) ("The proof did not adequately refute the possibility that the escalator–located in a subway station used by approximately 10,000 persons weekly–had been damaged by a member of the public either through an act of vandalism or, *as defendant's witness suggested*, by permitting an object such as a hand truck to become caught in the space between the step and sidewalk.") (emphasis added); *Birdsall v. Montgomery Ward and Co., Inc.*, 486 N.Y.S.2d 461, 462 (N.Y. App. Div., 3d Dep't 1985) ("Colfels, *Otis' maintenance supervisor*, testified without challenge that among the causes of bumping on an escalator are foreign objects, such as parts of sneakers,

To controvert this evidence, Plaintiff has not adduced any admissible record evidence from which a rational factfinder could exclude the actions of such third parties as significant causes of the injury.  For example, Plaintiff has not adduced the testimony of any of the Otis employees who serviced, or supervised the service of, the Escalator before or during the time in question (e.g., Kenneth Hale, David Skinner, or David Pettitte), stating that he has never seen foreign objects (such as parts of sneakers, buttons or other things dropped by passengers on the Escalator) that have made their way into the internal working of the Escalator.  Nor has Plaintiff adduced any testimony of an expert concluding, to a reasonable degree of scientific certainty after conducting an on-site inspection of the Escalator, that the Escalator could not have "jerked" in the way asserted as a result of such a foreign object making its way into the internal working of the machine.  Rather, Plaintiff offers mere speculation, which is insufficient.[24]

Moreover, New York courts have repeatedly found that an accident of this type on an escalator could have occurred in the absence of negligence on anyone's part.  *See, e.g., Bass v.*

---

buttons, etc., dropped by passengers on the escalator, which have eluded the combing mechanism at the foot of the escalator and gotten swept into the internal workings of the machinery. Obviously, such debris could become caught in the escalator and instantaneously precipitate bumping at any time the escalator was in use without negligence on the part of either Ward's or Otis.") (emphasis added); *cf. De Sanctis v. Montgomery Elevator Co.*, 758 N.Y.S.2d 419, 422 (N.Y. App. Div., 3d Dep't 2003) ("[W]e conclude that plaintiff did not establish sufficient exclusivity of control over the safe edge [of the elevator] here. Unlike cases involving breakdown of operating mechanisms that are relatively inaccessible to the general public . . . , the safe edge, which plaintiff asserts caused the accident, is designed to come into contact with the public and, thus, subject to potentially damaging misuse or vandalism . . . .  Accordingly, plaintiff is not entitled to have res ipsa loquitur charged to the jury.").

[24]    *See Rivera v. Nat'l Passenger R.R. Serv.*, 442 F. Supp.2d 164, 169 (S.D.N.Y. 2006) ("Defendant suggests that the metal cap [on the escalator] was probably dislodged by someone hitting it with a heavy object such as a suitcase, perhaps one with a sharp edge. Plaintiff has not even suggested an alternate theory, much less submitted evidence that would support it. A verdict in her favor, then, could only be based on mere speculation or guesswork, which is insufficient as a matter of law to support a finding of negligence.") (internal quotation marks omitted).

*Otis Elevator Co.*, 680 N.Y.S.2d 113, 113 (N.Y. App. Div., 2d Dep't 1998) (granting summary

judgment to Otis because escalator's "[coming] to a complete stop . . . could have occurred in

absence of negligence"); *Braithwaite v. Equitable Life Assurance Soc'y*, 648 N.Y.S.2d 628, 629-

30 (N.Y. App. Div., 2d Dep't 1996) ("The instant matter could not be submitted to a jury on the

theory of res ipsa loquitur, . . . because the injured plaintiff's accident [which assertedly

happened when the escalator had 'jerked'] could have happened without negligence on *anyone's*

part . . . .") (emphasis in original).

Fourth, in her opposition memorandum of law, Plaintiff fails to respond to Defendant

Otis' argument that, as a matter of law, any claim that Plaintiff is asserting against Defendant

Otis for strict products liability is without merit, because it is uncontroverted, based on the

current record, that Schindler Elevator Company (not Defendant Otis) designed, manufactured

and produced the Escalator.  (*See generally* Dkt. No. 23, Attach. 10, at 8-17 [attaching pages "8"

through "17" of Plf.'s Opp'n Memo. of Law].)  In this District (as in many districts), when a

non-movant fails to oppose a legal argument contained in a movant's memorandum of law, the

movant's burden with regard to that legal argument has been lightened such that, in order to

succeed with regard to that legal argument, he need only show the facial merit of the legal

argument.[25] Here, at the very least, Defendant Otis has met that modest threshold burden.  As a

_____

[25]     *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and
the Court determines that the moving party has met its burden to demonstrate entitlement to the
relief requested therein...."); *see, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS
12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his
opposition papers, to oppose several arguments by defendants in their motion for summary
judgment as consent by plaintiff to the granting of summary judgment for defendants with regard
to the claims that the arguments regarded, under Local Rule 7.1[b][3] ); *cf. Niles v. Nelson*, 72 F.
Supp.2d 13, 22 (N.D.N.Y.1999) (McAvoy, C.J.) (holding that when a party does not respond to a
portion of the opposing party's motion, they indicate that they consent to the granting of
summary judgment with respect to that portion of the motion or have abandoned the claim);
*Frink Am., Inc. v. Champion Road Machinery, Ltd.*, 48 F. Supp.2d 198, 209 (N.D.N.Y.1999)

result, to the extent that Plaintiff's Amended Complaint attempts to assert a claim against

Defendant Otis for strict products liability, that claim is dismissed.

For all of these reasons, all of Plaintiff's claims against Defendant Otis are dismissed.

**B.     The Syracuse Defendants' Motion**

After carefully considering the matter, the Court finds that Plaintiff's claim against the

Syracuse Defendants should be dismissed for each and every of the numerous alternative reasons

offered by the Syracuse Defendants in their memoranda of law.  (Dkt. No. 26, Attach. 10, at 9-17

[attaching pages "6" through "14" of Syracuse Defs.' Memo. of Law]; Dkt. No. 29, at 4-12

[attaching pages "1" through "9" of Syracuse Defs.' Reply Memo. of Law]; *see also, supra,* Part

I.C. of this Decision and Order [generally summarizing those reasons].)  The Court would add

only the following three points.

First, because Plaintiff never responded to the Syracuse Defendants' argument that

Defendant Syracuse Hancock International Airport is not a legal entity able to be held liable to

Plaintiff, the Syracuse Defendants' burden  with regard to that legal argument has been lightened

such that, in order to succeed with regard to that legal argument, they need only show the facial

merit of the legal argument.  *See, supra,* note 25 of this Decision and Order.  Here, at the very

least, the Syracuse Defendants have met that modest threshold burden.

Second, because Plaintiff expressly conceded the Syracuse Defendants' argument that

(under the circumstances) Plaintiff cannot avail herself of the doctrine of *res ipsa loquitur* in

maintaining her suit against Defendant City of Syracuse, the Syracuse Defendants' burden  with

---

(McAvoy, C.J.) ("Plaintiff does not address these claims in his opposition papers, leading the
Court to conclude that it has abandoned them.") (collecting cases); *see also Di Giovanna v. Beth
Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n. 108 (S.D.N.Y. Sept. 8, 2009) (citing
cases for proposition that plaintiff's failure to respond to argument made in summary judgment
motion as to why certain claim should be dismissed constitutes abandonment of claim).

regard to that legal argument has similarly been lightened.  Again, at the very least, the Syracuse Defendants have met that modest threshold burden.

Third, regarding Plaintiff's actual and constructive notice arguments, none of the prior-incident arguments asserted by Plaintiff in her memorandum of law in opposition to the Syracuse Defendants' motion for summary judgment differ materially from the prior-incident arguments asserted by Plaintiff in her memorandum of law in opposition to Defendant Otis' motion for summary judgment.  (*Compare* Dkt. No. 23, Attach. 10, at 8-12 [attaching pages "8" through "12" of Plf.'s Opp'n Memo. of Law] *with* Dkt. No. 28, at 11-17 [attaching pages "11" through "17" of Plf.'s Opp'n Memo. of Law].)  As a result, the prior-incident arguments that Plaintiff asserts against the Syracuse Defendants are rejected for the same reasons as stated above in Part IV.A. of this Decision and Order (as well as the reasons offered by the Syracuse Defendants in their memoranda of law).  The Court notes that the fact that any defect brought to the attention of the Syracuse Defendants during the two year period before the Accident would have been reported to Defendant Otis only further supports the Court's conclusion that Plaintiff's claim against the Syracuse Defendants should be dismissed: the evidence is clear that no such defect was reported to Defendant Otis during that time period, further establishing that no such defect was brought to the attention of the Syracuse Defendants.

For all of these reasons, Plaintiff's claim against the Syracuse Defendants is dismissed. Finally, because Plaintiff's claim against the Syracuse Defendants is dismissed, the Syracuse Defendants' cross-claims against Defendant Otis (which are premised on the success of Plaintiff's claim against the Syracuse Defendants) are also dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Otis' motion for summary judgment (Dkt. No. 20) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that the Syracuse Defendants' motion for summary judgment (Dkt. No. 26)

is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 12) is **<u>DISMISSED</u>**; and it is

further

**ORDERED** that the Syracuse Defendants' cross-claims against Defendant Otis (Dkt. No.

17) are **<u>DISMISSED</u>** as moot.

The Clerk of the Court is directed to enter Judgment for Defendants against Plaintiff, and

close this action.

Dated: January 14, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge